**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**FUEL FREEDOM INTERNATIONAL, LLC,**

        **Plaintiff,**

-vs-                                                          **Case No. 6:06-cv-488-Orl-31DAB**

**MAXMA, L.C., EXTREME RESEARCH, INC., KENNETH SANDERS, MARK SEYFORTH & MICHAEL DEBORD,**

        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. No. 21)**
>
> **FILED:** July 7, 2006
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

This is a suit for declaratory judgment of non-infringement of a patent, and various state law claims of interference with contracts and business relationships, and unfair trade practices. According to the allegations in the Verified Complaint, Plaintiff is a Florida limited liability company; Defendant Maxma, L.C. ("Maxma") is a Texas limited company; Defendant Extreme Research, Inc. ("Extreme") is a Florida corporation; Defendant Kenneth Sanders ("Sanders") is a resident of Texas and holder

of the Patent in issue; and Defendants Debord and Seyforth are Texas residents, and officers of Extreme. Maxma and Sanders move to dismiss the Verified Complaint for lack of personal jurisdiction. For the reasons set forth herein, it is **respectfully recommended** that the motion be **DENIED.**

### *FACTUAL BACKGROUND*

As set forth in the Verified Complaint and the Affidavit of Kenneth Sanders (Doc. No. 21), both Plaintiff and Maxma are in the business of selling fuel additive products. (Sanders at ¶ 2; Complaint at ¶ 14). Sanders holds a fuel additive Patent (the '082 Patent), and has licensed Maxma to manufacture and sell the product disclosed in the Patent (Sanders at ¶.2; Complaint at ¶ 16).[1] On February 17, 2006, attorneys for Maxma sent a cease and desist letter to Plaintiff, alleging that Plaintiff is infringing Maxma's Patent. (Doc. No. 1, Exhibit C).[2]

According to the Complaint, Debord and Seyforth "have circulated and distributed letters and mass emails falsely alleging patent infringement against Plaintiff." (Complaint at ¶20). These letters and material have appeared on several internet websites. *Id.* "Defendants" [presumably all] "have engaged in weekly telephone conferences with hundreds of distributors to whom they have propounded bogus allegations of patent infringement and rumors of an imminent patent infringement lawsuit" (Complaint at ¶21). Plaintiff asserts that Defendants' actions have interfered with the relationships between Plaintiff and Plaintiff's distributors and customers (Complaint at ¶29 and ¶45-52).

---

[1] Sanders notes that, until recently, he was President and CEO of Maxma. *Id.*

[2] Sanders avers that he is the Patent holder and Maxma is a licensee. According to the cease and desist letter, however, "Maxma has been granted" the '082 Patent at issue. The letter demands that Plaintiff stop infringing Maxma's intellectual property rights, and refers Plaintiff to Sanders and non-party Wayne Rutherford "if you would like to discuss licensing arrangements and business solutions." (Doc. No. 1, Ex. C).

According to the Affidavit, neither Sanders nor Maxma own real or personal property in Florida, nor have they directly conducted business here (Sanders at ¶¶3 and 5). Sanders attests as follows:

> Maxma has had an agreement with Defendant Extreme . . . since 2004 for Extreme to distribute Enviro-Max Plus, a fuel catalyst. During the term of this agreement and at least to the time of filing of this lawsuit . . . Maxma has furnished components of the Enviro-Max Plus product to DYO Chemical ("DYO"), a manufacturer in Dallas, who adds ingredients to create the finished product. Extreme pays Maxma in Texas for what Maxma delivers to DYO. In addition, Extreme pays DYO a separate fee for packaging and shipping the finished product to Extreme's customers to locations designated by Extreme. Neither Maxma nor [Sanders] has had any role in shipping the finished product to Extreme's customers or in determining the locales to which the product will be shipped.
>
> . . . Maxma has a non-interactive web site, viewable worldwide, that provides information to those who are interested in Enviro-Max Plus. That web site has referred to an address for Extreme in Melbourne Beach, Florida.

(Sanders at ¶¶5,6).

Sanders has averred that "Maxma has no right to control, and has not controlled or had a part in managing the affairs of Extreme in Florida," but notes that "in its Agreement with Maxma, Extreme is required to obtain prior approval from Maxma before making any representations regarding Maxma's products in sales, marketing activities, or campaigns of Extreme." (Sanders at ¶6 and 8). Sanders asserts that neither he nor Maxma approved or authorized publishing information concerning the cease and desist letter, and in fact "discouraged anyone from doing so." *Id.* Also, Maxma did not approve or authorize the internet postings attached to the Complaint. *Id.*

In its response to the motion to dismiss, Plaintiff attaches several unauthenticated documents[3] which purport to be pages from Extreme's website, and the website of another Florida corporation,

---

[3] No objection to these documents has been lodged.

EnviroFuel Plus, Inc. (Doc. No. 32, Exhibits C and D).   The pages include a biography of Sanders as part of the Extreme "leadership team," and written descriptions concerning Maxma and Maxma's EmviroMax Plus product.

The Agreement between Extreme and Maxma is not in the record.

### *STANDARDS OF LAW*

Where the Court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction,[4] the plaintiff must establish a *prima facie* case of jurisdiction over the defendant by presenting "sufficient evidence to defeat a motion for directed verdict." *Structural Panels v. Texas Aluminum Industries*, 814 F.Supp. 1058, 1063 (M.D. Fla. 1993) *quoting Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  The Court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by the defendant's affidavits. *Id.* at 855.  Where there is conflicting evidence, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.*

Where a defendant is not subject to general jurisdiction in the forum state, a district court may nonetheless exercise specific jurisdiction over a non-consenting defendant if the cause of action 'arises out of' or 'relates to' the defendant's in-state activity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985).  The determination of whether the Court has personal jurisdiction over a non-resident defendant requires a two-part analysis. *See Nida Corp. v. Nida*, 118 F. Supp.2d 1223, 1226-28 (M.D. Fla. 2000) (citing *Venetian Salami Co. v. Parthenais,*

---

[4]As noted recently by Judge Conway, Eleventh Circuit decisions indicate that an evidentiary hearing concerning personal jurisdiction is discretionary. *Mehlenbacher ex rel. Asconi Corp. v. Jitaru*, 2005 WL 4585859, *11 (M.D. Fla. June 6, 2005) (citing cases).

554 So.2d 499, 502 (Fla. 1989)). First, the Court must determine whether there is a basis for jurisdiction under Florida's long-arm statute, Florida Statute § 48.193. *See* FED. R. CIV. P. 4(e)(1), (h), and (k); *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626-27 (11th Cir. 1996). Second, if the Court finds that personal jurisdiction exists under Florida's long-arm statute, the Court must consider whether the defendant's contacts with the state of Florida are sufficient to satisfy the due process clause of the Fourteenth Amendment such that maintenance of the suit in Florida does not offend "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 315-17 (1945); *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir. 1990); *Venetian Salami,* 554 So.2d at 502. If the requirements of both Florida's long-arm statute and the Due Process clause are satisfied, then the Court may exercise personal jurisdiction over the non-resident. *See Madara v. Hall,* 916 F.2d 1510, 1516 (11th Cir. 1990).

### *ANALYSIS*

**Long Arm Statute**

Plaintiff cites to the following provisions of Florida's long-arm statute:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

    \* \* \*

> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> 1) The defendant was engaged in solicitation or service activities within this state; or
>
> 2) Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193 (2005).

Plaintiff asserts that Maxma and Sanders, through their agent Extreme, have engaged in business in Florida and have committed tortious acts here (the alleged disparagement and interference) within the meaning of the long arm statute. This Court finds that Plaintiff has made a sufficient showing, for present purposes, that long arm jurisdiction is met under § 48.193(1)(a) and (b), but not under § 48.193(1)(f).

"In order to establish an agency relationship in Florida, a party must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F.Supp.2d 1346, 1354 (S.D. Fla. 2000) (internal citations omitted). Under Florida law, a principal's actions may give rise to apparent authority and agency. *Nida Corp., supra,* 118 F. Supp.2d at 1227, citing *Overseas Private Inv. Corp. v. Metropolitan Dade County*, 47 F.3d 1111, 1114 (11th Cir.1995); *Borg-Warner Leasing v. Doyle Electric Company, Inc.*, 733 F.2d 833, 836 (11th Cir.1984); *Ja Dan, Inc. v. L-J, Inc*., 898 F.Supp. 894, 900 (S.D. Fla.1995). "The policy for this law is clear: "When one person acts for another who accepts the fruits of his efforts, the latter is deemed to have accepted the methods employed, and he may not, even though innocent, receive such benefits and at the same time disclaim responsibility for the means by which they were acquired."" *Overseas Private Inv. Corp., supra,* 47 F.3d at 1114, *quoting Standard Oil Co. v. Nickerson*, 103 Fla.

701, 138 So. 55 (Div. B. 1931). The determinative factor is the degree of control the principal has over the agent.

Applied here, the facts, when viewed in Plaintiff's favor, establish that Extreme is the agent for Maxma and Sanders, for purposes of long arm jurisdiction. Maxma and Sanders have acknowledged that Extreme is the chosen distributor of their product; Extreme has accepted the distributorship and has, in fact, actively sold and marketed the product in Florida and, apparently, elsewhere; and Maxma and Sanders have established control over Extreme's actions, to wit:

1) they provided information to Extreme for the purpose of Extreme's marketing activities for the benefit of Maxma and Sanders, including allowing Extreme to use Maxma's marks and holding out Sanders as part of Extreme's "leadership team;"

2) They have posted Extreme's Florida contact information on their own Maxma website, thus acknowledging Extreme as their agent for purposes of sales of the product;

3) Most importantly, as admitted by Sanders: "Extreme is required to obtain prior approval from Maxma before making any representations regarding Maxma's products in sales, marketing activities, or campaigns of Extreme." Thus, Maxma controls the marketing of its product, through contractual control of its agent, Extreme.

Note that this is not a case where an advertiser merely passively provided information to post on a website. *Compare Vax-D Medical Technologies, LLC v. Allied Health Management, Ltd.*, 2006 WL 680659, at 4 (M.D. Fla.) (Slip opinion). Nor is this an arms length relationship, as claimed by Maxma. Maxma does not merely sell product to Extreme as a wholesaler, for shipment to unknown and unconnected third parties. By contract, Maxma has the right to approve, and thus, the right to control, any and all marketing activity of its product. To the extent Plaintiff has alleged that it was

injured due to that marketing activity, that degree of control is sufficient for Maxma and Sanders to fall within Florida's long arm provisions regarding conducting business in the state.

Extreme has also alleged that these Defendants tortiously interfered with Plaintiff's business relationships. While not as precise as the Court would like, it appears that Plaintiff's Complaint alleges that some of the activities were directed to Plaintiff's customers (presumably in Florida) and Plaintiff was injured by these activities; presumably in Florida, where it is located. In view of the liberal deference afforded Plaintiff's verified allegations at this stage, Plaintiff has adequately established a basis for jurisdiction under § 48.193(1)(b).

Although not critical in light of the foregoing, the Court rejects Plaintiff's contention that long arm jurisdiction is also established pursuant to § 48.193(f). As set forth in *Structural Panels, Inc. supra*, 814 F.Supp. at 1065, this section does not permit jurisdiction over nonresidents for acts arising outside the state which cause financial injury within the state, in the absence of personal injury or property damage. *See Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991); *Aetna Life & Casualty Co. v. Therm-O-Disc, Inc*., 511 So.2d 992, 993-994 (Fla. 1987). As no such injury or damage has been alleged, this section is inapplicable.

Because there is a basis for jurisdiction under § 48.193(1)(a) and (b) of Florida's long arm statute, the Court proceeds to the second step of the analysis: due process.

**Due Process**

Maxma and Sanders spend the majority of their brief on an analysis of due process concerns, citing primarily Eleventh Circuit interpretations of the controlling law. The issue of personal jurisdiction in a declaratory action for non-infringement is, however, "intimately related to patent law"

and thus, is governed by Federal Circuit law regarding due process. *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc., et al,* 444 F. 3d 1356, 1361 (Fed. Cir. 2006).[5] Under Federal Circuit law, a three prong test is used: 1) the defendant purposefully directed its activities at residents of the forum; 2) the claim arises out of or relates to those activities, and 3) assertion of personal jurisdiction is reasonable and fair. *Id.* at 1362-3 (internal citations omitted). It is defendant's burden under the third prong of the test to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) ((1) the burden on the defendant in defending the lawsuit in the forum state; 2) the forum state's interest in adjudicating the dispute; 3) plaintiff's interest in obtaining convenient and effective relief; 4) interstate judicial system's interest in obtaining most efficient resolution of the controversy; and 5) shared interests of the several states in furthering fundamental substantive social policies).

### Purposefully directing activities at Florida

Defendants correctly note that the mere mailing of cease and desist letters do not constitute the transaction of business in a forum state. *See* Doc. No. 21 at 3; and *Breckenridge,* 444 F. 3d at 1363. These Defendants did more than merely send a cease and desist letter, however. The Court finds the nature of the relationship between Extreme, Maxma and Sanders is sufficient to conclude that these Defendants purposefully directed their activities to Florida.

As set forth by the Federal Circuit:

---

[5] Federal Circuit law of due process also applies to the joined non-patent claims if the resolution of the patent infringement issue will be a significant factor in determining liability under the non-patent claims. *Breckenridge,* 444 F.3d at 1361. Here, the basis of the tort claims is an alleged false representation of infringement. Thus, Federal Circuit law applies to the question of due process for this case.

> . . . [T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. *Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement.* In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases *or granting the licensor the right to exercise control over the licensee's sales or marketing activities*.

*Breckenridge* 444 F.3d at1366 (emphasis added).

In *Akro Corp. v. Lucker,* 45 F.3d 1541 (Fed. Cir. 1995), the Federal Circuit found that infringement letters sent into a forum state accompanied by the grant of a license to an in-state competitor doing business in the state were sufficient to justify assertion of personal jurisdiction against an out-of-state patentee. *Id.* In *Genetic Implant Systems, Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1458 (Fed. Cir. 1997), the Federal Circuit extended that rationale to find that the appointment of a distributor to sell a product covered by a patent is analogous to a grant of a patent license. The court noted that the Patent holder granted the distributor certain rights, including, among other rights, the right to use the holder's trademarks in marketing the product in the forum state. *Id.* A defendant purposefully avails itself of the privilege of conducting activities in a state when it enters into an exclusive license agreement that contemplates an ongoing business relationship beyond the mere passive receipt of royalty payments. *Breckenridge,* 444 F.3d at 1366-67.

Applied here, although the agreement itself is not in the record, it is undisputed that Maxma and Extreme have had an agreement "since 2004" for Extreme, a Florida corporation, to distribute Maxma's product. It appears that Extreme has distributed the product in Florida, among other places. The agreement, which is apparently ongoing, requires Extreme to obtain prior approval from Maxma before making any representations regarding Maxma's products in any of Extreme's marketing

activities.  Presumably this includes any marketing activities in Florida.  The Maxma website refers all orders and would-be customers to Extreme, at its address in Florida.  The Extreme website lists Sanders as a member of the leadership team, and contains liberal use of Maxma's trademarks. Further, although specific evidence is not in the record, the Court infers that the very act of entering into a distributorship agreement with Extreme might involve "doing business" in Florida, sufficient that, but for a contrary contractual provision, a Florida court would have jurisdiction over Maxma for an action for breach of that contract.  Moreover, taking the allegations of the Verified Complaint as true (which we must), Defendants published the cease and desist letter to Extreme in Florida, and Extreme republished it in Florida, via telephone calls and on various websites.  In total, this is no passive receipt of royalties case.  Maxma and Sanders[6] purposefully availed themselves of the privilege of conducting business activities in Florida.

**The claim arises out of those activities**

The claim is directly related to the activities described above – namely, the business relationship between these Defendants and their agent, Extreme.  The second prong is satisfied.

**Jurisdiction is not unreasonable**

Having found that the first two prongs of the due process test are satisfied, these Defendants must now present a "compelling case" that the exercise of jurisdiction over them by this Court would offend principles of fair play and substantial justice.  444 F.3d at 1367. The Defendants' argument on this point, in total, is as follows:

---

[6]As these Defendants have supplied contradictory information regarding the exact nature and status of the legal rights granted pursuant to the Patent (see footnote 2), for present purposes, Sanders and Maxma are interchangeable in this analysis.

> This Court should also decline to exercise personal jurisdiction over Defendants because the maintenance of this suit in Florida is unreasonable and violates "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In making the determination of whether these traditional notions are violated, this Court will examine relevant factors including: "1) the burden on the defendant in defending the lawsuit in the forum state; 2) the forum state's interest in adjudicating the dispute; 3) plaintiff's interest in obtaining convenient and effective relief; 4) interstate judicial system's interest in obtaining most efficient resolution of the controversy; and 5) shared interests of the several states in furthering fundamental substantive social policies." *Nida,* 118 F. Supp.2d at 1230 (citations omitted).
>
> Here, the Maxma Defendants have not (I) appeared in the state of Florida, (ii) personally conducted business in the State, or (iii) owned property in the State, speak for themselves. [sic] Subjecting them to jurisdiction in Florida violates traditional notions of fair play and substantial justice. Therefore, the Maxma Defendants respectfully request that this Court grant their motion to dismiss.

(Doc. No. 21 at 9).

Needless to say, Defendants argument does not provide a case that is "compelling." Although Defendants cite the correct law, there is no analysis as to the application of those factors in this case. The Court suspects that this is because such an analysis will not result in a finding that jurisdiction would be unjust here.  Absent any evidence to the contrary, the Court finds that the burden on these Defendants to defend here is not egregious; that Florida has a legitimate interest in this dispute, considering that all other parties, including co-defendants, are resident here and the actions complained of occurred here; Plaintiff has a legitimate interest in litigating in this forum, as there is no evidence that the other co-Defendants are amenable to service in any other forum; and the judicial system and the interests of both Texas and Florida favor resolving this controversy in one forum, rather than split among two.  Due process is not offended by a finding of personal jurisdiction here.

### *CONCLUSION*

The Court concludes that this Court has personal jurisdiction over Maxma and Sanders with respect to this action, and it is therefore **respectfully recommended** that the motion be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 16, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy